UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 23-89 |
| MERVIN AMACKER. JR. | SECTION: T (5) |

### ORDER AND REASONS

Before the Court is a Motion to Dismiss the Indictment filed by Defendant Mervin Amacker. R. Doc. 30. The government has filed a response. R. Doc. 33. The Court ordered additional briefing on April 7, 2025. R. Doc. 57. Defendant filed his brief, R. Doc. 58, and the government filed its response. R. Doc. 60. The matter was then submitted on the briefs when neither party requested oral argument. For the reasons set forth below, the Court will deny the Motion to Dismiss.

According to the New Orleans Police Department Incident Report, on March 8, 2023, Defendant was arrested by officers with the New Orleans Police Department after allegedly boarding a New Orleans Regional Transit Authority ("RTA") bus in New Orleans East with a firearm. He then directed the driver to take him to a nearby hospital. Defendant was later indicted by a Federal Grand Jury.

Defendant is charged by way of a two-count Indictment with one count of kidnapping and one count of being a felon in possession of a firearm. R. Doc. 1. Count One alleges that he willfully

1

and unlawfully seized, kidnapped, and held for ransom, reward and otherwise, Victim #1, and in committing and in furtherance of the commission of the offense, used a bus, a means, facility, and instrumentality of interstate and foreign commerce, in violation of 18 U.S.C. § 1201(a)(1).[1]

Count Two alleges that Defendant, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a conviction on June 25, 2013, in the Criminal District Court for the Parish of Orleans, Case Number 514-139, for possession of cocaine, 28-200 grams, in violation of La. R.S. 40:967(F)(1), did knowingly possess a firearm, that is, a Ruger 9E, 9mm handgun, bearing serial number 338-07085, and ammunition, said firearm and ammunition having been in and affecting interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[2]

---

[1] 18 U.S.C. § 1201(a)(1) provides:
   (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when--
   (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;…shall be punished by imprisonment for any term of years or for life and, if death of any person results, shall be punished by death or life imprisonment.

[2] 18 U.S.C. § 922(g)(1) provides:
   (g) It shall be unlawful for any person--
   (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; … to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in

In his Motion to Dismiss, Defendant seeks to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). Pursuant to Federal Rule of Criminal Procedure 12(b), a party may challenge an indictment for failing to state an offense. "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. Rule 12(b)(3). "The propriety of granting a motion to dismiss an indictment ... by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.... If a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal quotations marks and citations omitted). A court must take the allegations of the indictment as true and determine whether an offense has been stated. *Id.* (internal quotations marks and citations omitted).

With respect to Count One, Defendant contends the facts alleged in the Indictment fail to state an offense because they do not satisfy the jurisdictional element of § 1201(a)(1). Alternatively, he asserts, to the extent this Court determines otherwise, the statute is unconstitutional as applied to Mr. Amacker, because it exceeds Congress's power to regulate interstate commerce under the Commerce Clause. With respect to Count Two, Defendant asserts

---

interstate or foreign commerce.

18 U.S.C. § 924(a)(8) provides:
(8) Whoever knowingly violates subsection (d) or (g) of section 922 shall be fined under this title, imprisoned for not more than 15 years, or both.

3

the United States Supreme Court's recent holding in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022), establishes that § 922(g)(1) is unconstitutional under the Second Amendment, both facially and as applied to Mr. Amacker. Furthermore, he contends, independent of the Second Amendment issue, § 922(g)(1) is unconstitutional because it exceeds Congress's power to regulate under the Commerce Clause.

COUNT ONE

Defendant argues the RTA bus is not an instrumentality of interstate commerce, and therefore, the federal kidnapping statute, 18 U.S.C. § 1201(a)(1), does not apply. He contends the bus operates solely within Louisiana and does not cross state lines, thus failing to meet the jurisdictional element required for federal jurisdiction.

The government counters that the RTA bus is indeed an instrumentality of interstate commerce. It argues that the nature of the bus as a public transit vehicle inherently links it to interstate commerce, similar to other recognized instrumentalities such as trains and planes, which do not need to cross state lines to fall under federal jurisdiction.

The Court finds the RTA bus is an instrumentality of interstate commerce. In *United States v. Marek*, 238 F.3d 310, 317 (5th Cir. 2001), the Fifth Circuit held that the nature of the instrumentality, not its actual use in interstate commerce, determines its status. Citing *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Court explained that "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate

4

activities." *Id.* (quoting *Lopez*, 514 U.S. at 558). Thus, federal jurisdiction is supplied by the nature of the instrumentality or facility used, not by separate proof of interstate movement. *Id.* The RTA bus, as a public transit vehicle, is akin to other recognized instrumentalities like trains and planes, which are inherently linked to interstate commerce. As the government argues, the distinction Defendant attempts to draw between buses operated by the RTA and commercial carriers such as Greyhound finds no support in case law. Therefore, the Court finds that the use of the RTA bus in this case satisfies the jurisdictional element of 18 U.S.C. § 1201(a)(1), and that the statute is constitutional as applied to Defendant.

COUNT TWO

The defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him, citing the Supreme Court's decision in *Bruen* and the Fifth Circuit's decision in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). He contends that his prior conviction for possession of cocaine does not justify a permanent ban on firearm possession under the Second Amendment.

The government argues § 922(g)(1) is constitutional as applied to Defendant. It asserts the statute is consistent with the Nation's historical tradition of firearm regulation, as articulated in *Bruen* and *Diaz*. The government contends Defendant's conviction for possession of 28-200 grams of cocaine is analogous to offenses historically warranting disarmament.

The Court need not set forth a lengthy history of the "still developing area" of Second Amendment jurisprudence, because recent and thorough surveys thereof have been conducted by a number of courts at this juncture. *See, e.g., United States v. Gomez*, 2025 WL 971337, *3, Crim

5

A. No. 24-073 (N.D. Texas, Lubbock Div. March 25, 2025) (quoting *United States v. Rahimi*, 602 U.S. 680, 736 (2024) (Kavanaugh, J., concurring)). Suffice it to say that this Court must apply the framework established in *Bruen* and *Diaz*. Under *Bruen*, when the Second Amendment's plain text covers an individual's conduct, as it does here, the Constitution presumptively protects that conduct. *Bruen*, 597 U.S. at 24, 142 S.Ct. 2111. "The government must then justify its regulation by demonstrating that it is consistent with the Nations' historical tradition. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.*

The *Rahimi* Court qualified this analysis, emphasizing that "the Second Amendment permits more than just those regulations identical to the ones that could be found in 1791." *Rahimi*, 602 U.S. at 690-91. Courts "must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *Id.* at 692 (citations and quotations omitted). "Why and how the regulation burdens the right are central to this inquiry." *Id.* (citation omitted). Although "[t]he law must comport with the principles underlying the Second Amendment, [] it need not be a 'dead ringer' or a 'historical twin.'" *Id.* (citation omitted). A regulation may not be compatible with the right if it regulates arms-bearing "to an extent beyond what was done at the founding." *Id.*

In *Diaz*, the Fifth Circuit set forth a two-step analysis under *Bruen*. The court must consider whether the challenged law regulates conduct within the scope of the Amendment, and if so, the burden shifts to the government to demonstrate that the regulation is consistent with historical

6

tradition. 116 F.4th at 467. To meet that burden, *Diaz* requires the government to show that the restriction is "consistent with this Nation's historical tradition of firearms regulation" by identifying "a well-established and representative historical analogue" that is "relevantly similar" to the challenged law. *Id.* (quoting *Bruen*, 597 U.S. at 29, 30). Here, because the defendant as a felon is among "the people" protected by the Second Amendment and the "plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1), *Diaz*, 116 F.4th at 466-67, the government must show a longstanding tradition of disarming individuals with a criminal history analogous to the defendant's.

The government has met its burden by identifying historical analogues for disarming individuals convicted of offenses involving significant quantities of controlled substances. The Court finds that possession of 28-200 grams of cocaine, an amount larger than for personal use, is akin to drug trafficking, which has historically justified disarmament. A number of district courts in the Fifth Circuit have addressed as-applied challenges to § 922(g)(1) from defendants with predicate drug convictions. A majority of these cases concerned predicate offenses involving the sale of a controlled substance, intent to deliver a controlled substance, or other drug trafficking offenses, and not mere possession. *See, e.g., United States v. Barfield*, No. 2:24-CR-00007-01, 2024 WL 4859094, at *1 (W.D. La. Nov. 21, 2024); *United States v. Robinson*, No. CR 22-253, 2024 WL 4827375, at *6 (E.D. La. Nov. 19, 2024); *United States v. Hendrickson*, No. 3:23-CR-00418-E, 2024 WL 5113495, at *5 (N.D. Tex. Dec. 13, 2024); *United States v. Carter*, No. CR 23-22, 2024 WL 4723236, at *2 (E.D. La. Nov. 8, 2024); *United States v. Mack*, No. 3:24-CR-

00244, 2025 WL 221808, at *1 n.2 (W.D. La. Jan. 16, 2025); and *United States v. Patino*, No. 24-CR-60, 2024 WL 5010146, *5 (W.D. Tex. Nov. 26, 2024), *but see, e.g., United States v. Luna*, No. 2:23-CR-518, 2025 WL 760044 (S.D. Tex. February 10, 2025)(rejecting the rationale of those cases); and *United States v. Gomez*, 2025 WL 971337, *3, Crim A. No. 24-073 (N.D. Texas, Lubbock Div. March 25, 2025)(same).

In *Diaz*, the Fifth Circuit denied a *Bruen* as-applied challenge to § 922(g)(1) on the following analogues: (1) historical laws authorizing capital punishment and estate forfeiture as consequences for felonies; (2) two proposals from state constitutional conventions that excluded those deemed dangerous from bearing arms; and (3) colonial-era "going-armed" laws that "prohibited going armed offensively and authorized forfeiture of weapons as punishment." *United States v. Alexander*, 2024 WL 4805388, at *2 (W.D. La. Nov. 15, 2024) (citing *Diaz*, 116 F.4th at 467, 468, 470). These analogues "are ... rooted in a common purpose: the disarming of individuals viewed to be violent or a threat to public safety." *Id.*; *see Diaz*, 116 F.4th at 469 (explaining that laws authorizing capital punishment and estate forfeiture were justified by the need to punish felons adequately, deter reoffending, and protect society from those proven untrustworthy to follow the law).

In *Barfield*, an as-applied challenge to § 922(g)(1), the defendant's underlying felonies included possession of a controlled dangerous substance II with the intent to distribute, distribution of a controlled dangerous substance II, and possession of a stolen firearm. The court first noted that "[i]llegal drug trafficking is a largely modern crime with no direct historical analogue." 2024

8

WL 4859094 at *2 (quoting *United States v. Dorsey*, 2023 WL 7019185, at *1 (M.D. Pa. Oct. 25, 2023)). Nevertheless, the court found that colonial and founding-era legislation reflected the threat to public safety posed by a market in illicit goods. *Id.* "Acts such as stealing mail, making or trading counterfeit or forged securities, and trading stolen horses were capital crimes punishable by death." *Id.* (citations omitted). In the modern era, the court noted, "lawmakers have made a reasoned decision that drug traffickers are dangerous and disruptive to society," taking into account "the well understood connection between drugs, firearms, and deadly violence[.]" *Id.* (quoting *United States v. Reichenbach*, 2023 WL 59116467, at *8 (M.D. Pa. Sep. 11, 2023)). The *Barfield* court observed that such a connection between drug trafficking and violence was reflected in, not only the prohibition on firearm possession by any felon under § 922(g)(1), but also through a federal statute criminalizing the mere possession of a firearm while trafficking controlled substances under § 924(c). *Id.* The *Barfield* court then concluded that the government had shown through historical analogue that the restrictions applied through § 922(g)(1) on the defendant's right to carry a firearm are constitutional. *Id.*

In *Patino*, also an as-applied challenge to § 922(g)(1), the defendant's predicate conviction was felony possession of four ounces of marijuana. The court found that Founding-era laws criminalizing the possession of illicitly obtained goods, such as stolen or forged goods, and going armed laws were sufficiently analogous. 2024 WL 5010146 at * 5. The court rejected the argument that these laws were too different from the law behind criminalizing marijuana possession. The court noted that *Rahimi* specifically rejected a too stringent analogical analysis in overturning the

9

Fifth Circuit. The court reasoned that courts are not shackled by history but are thereby guided. *Id.* at *6. Not only do the historical analogues share the common purpose of deterring lawlessness and violence, the court found that Congress has long-recognized "that drugs and guns are a dangerous combination." *Id.* (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993)). The court then concluded that the government need not identify a "historical twin" but only a "historical analogue." *Id.* (citing *Bruen*, 597 U.S. at 30.) The court further reasoned that, because of the dangerous combination of drugs and guns, "permanently disarming felons like [the defendant] who have committed serious drug and gun felonies, felonies often associated with violence, is consistent with the Nation's historical tradition of firearm regulation." *Id.*

      The court finds the reasoning of both *Barfield* and *Patino* apply to this defendant. Although Defendant attempts to characterize this case as one of simple possession, the predicate felony of possession in an amount between 28 and 200 grams, with its correspondingly more onerous penalty provision, *see* La. R.S. 40:967(F)(1) in effect at the time of the commission of the underlying offense, R. Doc. 60, p. 6 and nn. 2, 3, and 4, aligns more with possession with the intent to distribute and drug trafficking rather than personal use. Founding-era laws severely punished the trafficking of contraband and stolen items. Given the understanding of the connection between drugs and gun violence, this Nation's history and tradition are not offended by permanently disarming drug traffickers and possessors of drug quantities exceeding personal use. As the government points out, modern firearms restrictions seem more closely tied to preventing violence and social disorder than many of the founding-era crimes deemed worthy of the death penalty, especially the theft

10

laws considered in *Diaz*. Moreover, several Justices have noted that post-founding era, or post-ratification, traditions and history can assist in the *Bruen* analysis. *See Rahimi*, 144 S.Ct. at 1917 (Kavanaugh, J., concurring) and 1924 (Barrett, J., concurring). With those concepts in mind, the Court finds that the government has identified historical analogues, as well as post-ratification history, which indicate that disarming this defendant does not violate his constitutional rights. Thus, Defendant's as-applied challenge to § 922(g)(1) fails under *Diaz*.

CONCLUSION

In sum, the Court finds that the RTA bus is an instrumentality of interstate commerce, thereby satisfying the jurisdictional element of 18 U.S.C. § 1201(a)(1) and that 18 U.S.C. § 922(g)(1) is constitutional as applied to the defendant.[3] Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (R. Doc. 30) is DENIED.

New Orleans, Louisiana, this 5th day of May 2025.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[3] The Court finds that Defendant's remaining challenges also fail. His facial challenge to § 922(g)(1) was rejected by *United States v. Contreras*, 125 F.4th 725, 729 (5th Cir. 2025). His Commerce Clause challenge was foreclosed by *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013). A vagueness challenge fails because the prohibited conduct is clearly defined in the statute. *See United States v. Edwards*, 182 F.3d 333, 335 (5th Cir. 1999) ("A criminal statute survives … vagueness review if it defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). The Court also finds no merit in his Commerce Clause challenge to 18 U.S.C. § 1201(a)(1).